AYRES, Judge.
This action for property damage was instituted as the result of the collision of *416 two gravel trueles. November I, 1952, on State . Highway No. 169 between Fort Necessity and Wisner in Franklin Parish, Louisiana. The plaintiffs are O. C. Whit-lock, Jr., the owner and driver of one of. the trucks, and his insurer. The defendants are Leon Boothe, owner of the other truck, and his driver, Buford Salters. Both plaintiffs and defendants charged the other with negligence constituting the proximate cause of the accident and prayed for judgment accordingly.
From a judgment in plaintiffs’ favor and also rejecting defendants’ reconventional demands, defendants have appealed.
The negligence charged by each of the drivers of the vehicles against the other consists of driving on the left or wrong side of the road, at an excessive rate of speed under the prevailing circumstances and conditions, without keeping a proper lookout, without keeping his vehicle under proper control, and failing to slow down or stop when visibility was such as made it unsafe to proceed. In the alternative, defendants charged plaintiff Whitlock with contributory negligence in the aforesaid particulars.
The evidence establishes these- facts: Both trucks, together with a series of other trucks, variously estimated from 40 to 75 vehicles, were engaged in hauling gravel from pits to a road project then under construction by the Department of Highways. The highway, surfaced with' gravel at the scene of the accident, was straight for some distance in each direction, with a width testified by different witnesses as being from 15 to 24 feet. The variation in the testimony was probably due to the failure of some witnesses to take into account the width of the shoulders. The highway at this point was used for two-way traffic for the travel of both loaded and empty trucks. The weather was extremely dry and dusty, and visibility was reduced to a very minimum by the excessive dust, the extent of which required the use of headlights on the trucks during mid-day. (The accident occurred about 12:00 o’clock noon.) Visibility was reduced, according to the testimony, from 15 to 20 feet ahead of the trucks.
At the time of the accident, defendant’s truck, driven by Salters, was proceeding from the pit to the project, heavily loaded with approximately 5 yards of gravel, estimated to weigh 15,000 pounds. He had just crossed a very rough and spongy section of the road graded up across a bayou swamp, which section of the road was locally known as “King’s Dump”. Too, Salters had just proceeded around a sharp curve -about half a mile to his rear and was traveling at a speed estimated at between 15 and 20 miles per hour in the “dog” gear, described as one of the lower speed gears of the truck, when he met Whitlock’s empty truck. Salters was following another gravel truck driven by W. T. Mahoney. Salters stated his version of the accident:
“I was driving along there, I was driving slow because this other truck was ahead of me, and I was keeping out of dust as much as possible, too. Well, that empty truck come flying by there, and - then his lights appeared right up in my face. I snatched my front end over, and by the time I got my front end — I was just riding with my front wheel right in the ditch — well, he hit my back end and throwed me in the ditch”.
He further testified that he was traveling within a foot or two of the ditch on his right-hand side of the road when he first noticed Whitlock’s truck with his lights on, wavering in the road, only 15 or 16 feet away.
Whitlock’s version of the accident was stated thus:
“Well, it was right at 12 o’clock. I had dumped a load over on the road and I had started back, me and my other truck, and was following a truck that was ahead of me; and I met a truck, which was Mr. Mahoney, and passed him, and all of a sudden there was Mr. Salters’ truck — we both had *417 our headlights on, and he' was way over on my side of the road. I saw I couldn’t do anything — I was on my side of the road. I was running right alongside the ditchbank — and. I saw I: couldn’t do anything besides just try to get away from him and get in the ditch. So I got the cab of my truck by him and he hit the dump body, and it turned me over. He ¡rode on down the road SO or 75 feet and stopped.”
Whitlock estimated his 'Speed at 30 to 35 miles per hour., , . . ■ ' ,
Mahoney, who was immediately ahead of Salters and who was driving the truck which Whitlock met immediately preceding the accident, testified that when he met Whitlock he was driving fast and seemed to crowd him a little on the highway, for •yvhich he attributed as a possible reason that,' due to" th$ loose gravel, Whitlock’s truck was sliding sidewise. As to their meeting, Mahoney further said:
“Well, it seemed like he was driving pretty fast, but, you know, you can’t tell how fast a man is driving just meeting him on the road. The dust was so bad — he had his lights on — -he was right on me before I ever could ever see him, probably in 15 feet of me.”
Inconsistencies in their testimony may be charged to witnesses on both sides as well as to some of the litigants themselves, but such appear to involve irrelevant, immaterial and unimportant matters and are of insufficient character to justify serious consideration in the light of what we think the facts are as established by the record as a whole.
From a study and review of the record, we are convinced it is clearly established that both trucks were traveling too near the center of the highway, with visibility so bad that the driver of each truck could not see the other until within a distance of a few feet away when it was too late to do anything effective to prevent the accident. Within a few feet before the actual collision, when each driver finally observed the other, both suddenly swerved to their right sufficiently to prevent a head-on collision but not in time to.prevent each, truck from side-swiping the other. Each truck was precipitated to the ditch, on its right-band side of the highway, plaintiff’s truck, however,, only after it had turned over.
Both drivers' were clearly negligent, not only in the aforesaid respects, but each was driving too fast under the conditions and circumstances, such as an almost total lack of vision due to dust and in not keeping a proper'lookout. Their concurrent negligence, continuing to' the moment of the impact, was .the .proximate cause of the accident, barring recovery by either plaintiffs or defendants. McLeljand v. Harper, La.App., 38 So.2d 425.
Moreover, the record discloses that Salters' is á minor and was only' 18 years of age at the time of-the accident. There is no showing of his emancipation or capacity to be sued or to starid'in judgment. For this additional feason, the judgment as to him was erroneous.
For the reasons assigned, the judgment appealed is reversed and plaintiffs’ demands rejected and their suit dismissed at their costs; otherwise, the judgment is affirmed.
Reversed in part and affirmed in part.