GASKINS, J.
|, John Robert Johnson, Jr., the claimant in this workers’ compensation case, appeals from a judgment dismissing his claims. He now asserts that the workers’ compensation judge (WCJ) “overlooked” portions of the medical evidence which supported his claim. The defendants — the employer, T & J Hauling Company, Inc., and the workers’ compensation insurer, Louisiana Construction and Industry Self-Insurer’s Fund — answered the appeal, arguing that the WCJ erred in not finding that the fraud provisions of La. R.S. 23:1208 were applicable due to false statements made by the claimant. We affirm the judgment of the WCJ.
FACTS
The claimant was one of the owners of T & J Hauling Company, Inc.; he also drove for the company. Shortly after noon on February 11, 2009, he was driving an 18-wheeler pulling a trailer when he was allegedly injured in a collision with a pickup truck in Texas. Although his vehicle went into a ditch, the claimant, who was wearing a seat belt, refused treatment at the scene and was not transported to the hospital. That evening, he went to the emergency room (ER); he was diagnosed with a *3 strain injury and released to return to work.
The defendants initially paid the claimant indemnity and medical benefits. The claimant, who is a diabetic, has a long and complicated medical history. Some of his medical issues apparently arose from prior accidents, as well as other medical conditions. In December 2008, shortly before the instant auto accident, the claimant’s family doctor, Dr. John Chandler, diagnosed him with carpal tunnel syndrome. Dr. Chandler |2ordered a cervical MRI, which was done on January 22, 2009, and referred him to an orthopedic doctor, Dr. Eubulus Kerr, who first saw him in late January 2009. Dr. Kerr diagnosed the claimant as having cervical radiculopathy. The claimant also had significant peripheral neuropathy which Dr. Kerr attributed to his diabetes. Dr. Kerr recommended a cervical fusion. However, in June 2009, the defendants sent the claimant to see Dr. Robert Holladay, an orthopedic surgeon. He disagreed with the opinion of Dr. Kerr that the claimant needed a cervical fusion.
On January 6, 2010, Dr. Karl Bilder-back, an orthopedic surgeon, performed an independent medical examination (IME) on the claimant. After examining the claimant and reviewing his extensive medical history, the doctor saw no indication for lumbar or cervical surgery or any other invasive procedure, including injections. Dr. Bilderback found no clinical evidence of either cervical or lumbar radiculopathy. The medical history indicated that the claimant had substantial issues before the accident which did not significantly change after the accident. However, Dr. Bilder-back noted what he termed “significant evidence of symptom amplification” by the claimant. The doctor saw no reason to restrict the claimant’s work activity based upon the February 2009 accident. Following Dr. Bilderback’s report, the defendants discontinued the claimant’s benefits.
In January 2010, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation (OWC). He asserted that he was unable to work due to injuries to his head, shoulder and back; that he had been denied recommended medical treatment; and that the IME by Dr. |aBilderback was inadequate. He indicated that no wage benefits had been paid since January 26, 2010. The claimant filed a first amended disputed claim for compensation in July 2010. Here he asserted that he was entitled to indemnity benefits, all reasonable and necessary medical treatment, penalties and attorney fees. He claimed injury to his head, right shoulder, back and neck.
In January 2011, the claimant — who was then proceeding in proper person — filed a “motion for perjury by statement” against the defendants’ counsel. He apparently alleged that counsel made a false statement in a letter to the claimant pertaining to his MRIs.
In February 2011, the defendants filed an answer urging application of La. R.S. 28:1208 due to false statements made by the claimant for the purpose of obtaining benefits. The defendants asserted that the claimant’s deposition had been taken in January 2011 and that he had made numerous false statements. According to the defendants, the claimant essentially testified that he had only minor health issues before the accident and no previous major accidents and that all of his maladies were attributable to the instant accident. They claimed that this testimony contradicted his medical records in many respects.
The case was tried on March 15, 2011. The claimant’s medical records were admitted into evidence, as was Dr. Holladay’s deposition. The doctor testified that while there might have been some temporary *4 exacerbation of some of the claimant’s preexisting conditions (specifically his neck, back and carpal tunnel), there were no permanent injuries as a Rresult of the instant accident. The claimant, who was representing himself, was sworn and, with some guidance from the WCJ, presented his own testimony. He was then cross-examined by the defendants’ counsel. Essentially, the claimant testified that all of his many current ailments were somehow related to the instant accident.
At the conclusion of the claimant’s testimony, the defendants made a motion to dismiss. The WCJ then found that the claimant had failed to carry his burden of proof to establish entitlement to any award. In assigning oral reasons for judgment, the WCJ specifically found that the claimant was not credible.[1] Suit was dismissed at the claimant’s cost. The motion for perjury and/or contempt filed by the claimant was also dismissed at the claimant’s cost. Judgment was signed on March 17, 2011.
On March 24, 2011, the claimant filed a motion for new trial. He asserted that the WCJ made “some false ruling” against him on his motion for perjury. The WCJ denied the motion.
The claimant appeals. He contends that the WCJ “overlooked” certain of his medical records.
| ¿LAW
An employee is entitled to workers’ compensation benefits if he received personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An “accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). In a workers’ compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. Koenig v. Christus Schumpert Health System, 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037.
Proof by a preponderance of the evidence is sufficient where the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Lowe v. Skyjacker Suspensions, 45,058 (La.App.2d Cir.3/3/10), 32 So.3d 340; Player v. International Paper Company, 39,254 (La.App.2d Cir.1/28/05), 892 So.2d 781. The claimant must establish a causal link between the work-related accident and his injury. Player v. International Paper Company, supra. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Player v. International Paper Company, supra; Millage v. Builder's Lumber Supply Company, 38,635 (La.App.2d Cir.7/2/04), 877 *5 So.2d 1171, writ denied, 2004-1885 (La.10/29/04), 885 So.2d 594.
The worker’s testimony alone may be sufficient to satisfy this burden, provided that two elements are satisfied: (1) no other evidence discredits or easts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Authement v. Wal-Mart, 2002-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564; Davis v. Claiborne Electric Cooperative, Inc., 45,806 (La.App.2d Cir.12/15/10), 56 So.3d 321.
A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689; Hatfield v. Amethyst Construction, Inc., 43,588 (La.App.2d Cir.12/3/08), 999 So.2d 133, writ denied, 2008-2996 (La.2/13/09), 999 So.2d 1150. The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of a causal connection between 17the accident and the activation of the disabling condition. Peveto, supra; Green v. Thompson Home Health, 46,593 (La.App.2d Cir.9/21/11), 73 So.3d 490.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Dombrowski v. Patterson-UTI Drilling Company, 46,249 (La.App.2d Cir.4/13/11), 63 So.3d 308. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to bé disturbed upon review unless clearly wrong. Green v. Thompson Home Health, supra.
To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine that the record establishes that the finding is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993); Dombrowski v. Patterson-UTI Drilling Company, supra. Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have |sweighed the evidence differently. Stobart v. State through Department of Transportation and Development, supra; Dombrowski v. Patterson-UTI Drilling Company, supra.
MEDICAL EVIDENCE
As previously noted, the claimant has a long and complicated medical history. In addition to the instant accident, he had *6 been involved in other auto accidents in 1990 and 2006. These resulted in neck, shoulder and back issues. As early as 1995, the claimant’s VA medical records demonstrated that he had a “long history of low back pain.” Lumbar spine MRIs in 1995 and 1997 showed herniated discs.
The claimant was diagnosed with diabetes more than a decade ago. Since then, he has had several periods where this condition was out of control. He has diabetes-related peripheral neuropathy. In the years preceding the instant accident, he was hospitalized for kidney disease. About six weeks before the instant accident, his complaints of tingling and numbness in his fingers led to a diagnosis of carpal tunnel syndrome. Dr. Kerr sáw the claimant for the first time on January 27, 2009, weeks before the instant accident. He diagnosed the claimant as having cervical radiculopathy.[2] An MRI of the claimant’s cervical spine done on January 22, 2009 showed some degenerative disc changes and spinal stenosis or narrowing.[3]
|aIn October 2009, the claimant was arrested for nonsupport and placed in the back seat of a patrol car in handcuffs. He asserted that while being transported to jail, he suffered a shoulder injury as a result of falling over in the vehicle during a sharp turn. He later sued the Department of Social Services for this alleged injury.
The claimant subsequently developed blood clots in his legs which required the placement of an IVC filter in 2010. The claimant testified that he believed the clots were a result of the instant accident. However, no medical evidence supports this assertion. Dr. Holladay testified that when he examined the claimant in September 2009, he had no symptoms consistent with blood clots.
DISCUSSION
Under the facts presented in this case, in order to prove entitlement to workers’ compensation benefits, the claimant was required to prove by a preponderance of the evidence that he suffered a disabling injury. He was specifically obliged to prove that the accident aggravated his preexisting condition by showing that: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of a causal connection between the accident and the activation of the disabling condition.
Our review of the medical evidence— including the records allegedly “overlooked” by the WGJ — reveals no manifest error in the WCJ’s |10conclusion that the claimant failed to carry his burden of proof. Taken as a whole, the evidence shows that the claimant had significant health issues prior to the instant accident. While the instant accident caused exacerbation of some of these conditions, it was the expert opinion of Dr. Holladay and Dr. Bilderback that this exacerbation was only temporary. According to these doctors, the claimant had the same symptoms after the instant accident as he did before it occurred.
*7 We particularly note the deposition of Dr. Holladay, as he was the only physician whose testimony was presented at trial. Dr. Holladay saw the claimant twice in 2009, first in June, then in September. He also had the benefit of reviewing the claimant’s medical records. He opined that none of the claimant’s complaints were caused by the instant accident. Some, like the cervical spine issues, were temporarily exacerbated (i.e., some increased symptoms), but there was no objective evidence of aggravation (i.e., an objective change in an underlying preexisting condition that shows acceleration, progressively increasing changes relatable to a specific traumatic event). In September 2009, Dr. Holladay felt that the claimant was still having some residual problems from the exacerbation but not enough to keep him from returning to his job as a truck driver. While Dr. Holladay had some concerns about the numbness and tingling in the claimant’s hands, the claimant had those same symptoms before the instant accident. Finally, Dr. Holladay did not believe that the claimant suffered any permanent injury as a result of the instant accident.
|nIt appears that the claimant does not fully understand the meaning of certain things in his medical record. He seems to attach great importance to the changes in his modic endplate noted in a March 13, 2009, lumbar MRI. However, in his deposition, Dr. Holladay explained that such changes are degenerative. As such, by definition, they are gradual, taking place over time, as opposed to being the result of a sudden trauma.
Likewise, the claimant cites language in the report of his January 2009 cervical spine MRI that there was “no cord effacement” and contrasts it with a finding of “definite flattening of the cord” in a doctor’s report discussing the results of his February 2010 cervical spine MRI. The claimant apparently believes that this constitutes some sort of proof that headaches he allegedly suffered were caused by the instant accident. However, we note that in reaching this conclusion, the claimant ignores other portions of the same February 2010 doctor’s report which indicate that the headaches could be related to cervical degeneration or that his diabetic polyneuropathy could be playing a role in his symptom production.
The claimant also accuses the WCJ of overlooking evidence pertaining to abdominal pain. The record shows that the claimant made two complaints concerning his abdomen. One involved a boil which he testified first appeared on the left side, then disappeared, only to reappear a year later on the right side. His medical records indicate that in March 2009, he complained about a boil on his abdomen that occurred after something bit him after the instant accident when he was under his truck releasing the brakes so it could be pulled from the ditch. Medical personnel who | ^examined him shortly thereafter believed it was a spider bite and lanced the boil. He was treated by Dr. Chandler for a staph infection in connection with this boil. In his 2011 medical records, the claimant complained of abdominal pain which he related to the steering wheel hitting him in the stomach in the instant accident. He asserted that an umbilical hernia repaired in 2006 had reoccurred after the instant accident, and then moved from the right side to the left side in August 2009. However, Dr. Holladay testified that the claimant never indicated to him that he had suffered any abdominal trauma in 2009. Furthermore, the doctor testified that he would expect that the degree of abdominal trauma asserted by the claimant to have been treated in the ER or by a doctor who treated him after the accident and that an acute abdominal *8 injury would not be without symptoms for almost two years. Also, Dr. Holladay said it would be “very unusual and very uncommon” for trauma swelling to go away and come back in a different place. Taking into consideration that the claimant was wearing a seat belt at the time of the collision and that he did not complain about any abdominal trauma when he saw him in June 2009, Dr. Holladay could not relate this complaint to the instant accident.
The claimant also asserted a head injury based upon a knot appearing on his head at least two weeks after the instant accident. However, the ER records make no mention of a head injury and his medical records document that the claimant told Dr. Chandler that he did not recall hitting his head. Yet he testified that he later recalled that he did hit his head. Brain CT scans were unremarkable.
| lsThe claimant testified that since the instant accident, his diabetes has been “out of control.” However, he conceded that no doctor has related those problems to the instant accident.
Our careful review of the record before us leads us to the inescapable conclusion that the WCJ’s decision was fully supported by the evidence. The claimant failed to prove by a preponderance of the evidence that he suffered a disabling injury due to the instant accident beyond a temporary exacerbation of the medical maladies he already had. Accordingly, we find no manifest error in the WCJ’s ruling.
MOTION FOR PERJURY
The claimant also complains about the WCJ’s denial of his “motion for perjury by statement” against the defendant’s counsel. The actual motion is virtually incomprehensible. However, to the extent that it appears that the claimant is asserting that counsel made a false statement to pressure the claimant to not pursue his ease, we find no manifest error in the WCJ’s denial of the motion. The claimant failed to prove that counsel committed any intentional act constituting perjury, in violation of La. R.S. 14:123, or insurance fraud, in violation of current La. R.S. 22:1924 (formerly La. R.S. 22:1243), the statute he cites in his brief to this court.
APPLICATION OF LA. R.S. 23:1208
In their answer to the appeal, the defendants contend that the WCJ erred in not finding that La. R.S. 23:1208, which pertains to false statements made to obtain workers’ compensation benefits, was applicable. Because the WCJ found that the claimant failed to prove entitlement to benefits, he 114apparently found it unnecessary to rule on the issue of whether the claimant made false statements to obtain benefits under La. R.S. 23:1208. We likewise find it unnecessary and conclude that the defendants raised the issue on appeal out of an abundance of caution. Accordingly, we pretermit this matter. See and compare LaFrance v. Weiser Security Service, Inc., 2001-1578 (La.App.4th Cir.3/27/02), 815 So.2d 339, writ denied, 2002-1169 (La.6/14/02), 818 So.2d 784; and Guest House of Slidell v. Wilson, 2001-2263 (La.App.1st Cir.10/2/02), 835 So.2d 656.
CONCLUSION
The judgment of the WCJ is affirmed. Costs of this appeal are assessed to the appellant, John Robert Johnson, Jr.
AFFIRMED.

. In giving his oral ruling, the WCJ went to great lengths to explain his rationale to the claimant. On the issue of the claimant's credibility, the WCJ stated that he had watched the claimant change his testimony in court, that the claimant had "a quick answer for everything," and that the claimant's "play[ing] games with words” had made his testimony unbelievable. The WCJ went on to say that the claimant wanted him to believe him, but "I think you’ve overdone it to the point where I can't believe you.”
The claimant’s testimony pertaining to his carpal tunnel is illustrative. At one point in his testimony, the claimant stated that his carpal tunnel — which was diagnosed in late December 2008 — was cured by the time the instant accident occurred six weeks later. Yet approximately 13 lines further down in the transcript, he denied saying he was cured.

. The claimant's next appointments with Dr. Kerr were on March 17, 2009, and April 28, 2009. Interestingly, Dr. Kerr’s notes indicate that the claimant did not inform him of the instant accident on February 11, 2009, until the April appointment.

. According to Dr. Holladay's testimony, another cervical MRI performed in December 2009 was essentially the same.