MOORE, J.
| Offshore Energy Services Inc. appeals a judgment which found that its former employee, Leroy Brown, sustained a work-related injury, that his current medical condition was causally related to the work-related injury, and that he was entitled to supplemental earnings benefits (“SEB”) starting June 28, 2009. Brown answers the appeal, contesting portions of the judgment which denied his claims for SEB from November 24, 2008, to June 27, 2009, and for temporary, total disability (“TTD”) or permanent, total disability (“PTD”) starting June 28, 2009, and penalties and attorney fees. We affirm.

Factual Background

Brown went to work for Offshore in August 2008 as a truck driver making $6.50 an hour. He testified that one of Offshore’s semi tractors had a bad clutch that kept sticking to the floor. On October 24, 2008, he drove this rig to Nacogdo-ches, Texas, to make a pickup, and then to Longview, Texas. While he was driving in Longview, the clutch malfunctioned once again. After he stomped it a few times, it suddenly unstuck, jerking up his left leg with great force and causing immediate pain from his ankle to his thigh, centering in his knee. He testified that he called his district manager, Gary Coker, to report the accident; however, Coker only recalled Brown telling him that the clutch was sticking, not that he had been injured.
Despite his pain, Brown made the return drive to Oil City; he testified that he asked the dispatcher (whose name he could not recall) for an incident report, but the dispatcher replied he could not find the right form for it. He also testified that a coworker named Lloyd saw that he was hurt, | ¡¡but Lloyd was not called to testify.
The next day, October 25, Brown went to Willis-Knighton Medical Center. According to Brown, he told the triage nurse that he injured his leg stomping on the broken clutch of his truck. The nurse’s notes reflect this, as well as that “pain began 2-3 days ago”; however, the physician’s notes, by Dr. Joseph Farquhar, stated, “symptoms/ episode began/ occurred gradually, 3 year(s) ago.” Brown received a shot, some Lortab for pain, and a two-day work excuse. He testified that he handed the excuse to the dispatcher and again asked for an incident report, which *498 the dispatcher still was unable to find. The district manager, Coker, testified that he never saw a work excuse “from one of our doctors.” Coker insisted that under DOT regulations, Offshore must drug-test any employee who reports an accident; since he ordered no drug test, there must not have been any accident.
Brown testified that after his two days off, he returned to work, but it was a struggle with his knee swollen and throbbing; he just could not perform as before. On November 24, one month after the accident, Offshore fired him. Coker testified that Brown had been a good worker for a couple of months, but he had become “inconsistent” about being available for routes and, later, failed to answer his phone calls.
On December 7, Brown applied for unemployment benefits, which he received after the Louisiana Workforce Commission rejected Offshore’s claim of misconduct connected with the employment. He testified that these benefits lasted about two months. On January 5, 2009, he filed an EEOC complaint alleging a Title VII violation based on retaliatory discharge; | .-¡however, the agency dismissed it on February 4. According to Offshore, this complaint did not mention any work-related injury.
In late February 2009, Brown took a part-time job, about 16 hours a week, driving auctioned cars for Greater Shreveport-Bossier Auto Auction, earning $6.00-8.00 an hour. He testified that he did this in constant pain and eventually had to quit because of the pain. The auto auction’s records showed that this job ended June 11, 2009.

Procedural History and Action in the OWC

Brown filed the instant disputed claim in April 2009. He alleged he was injured on the job on October 24, 2008, and that Offshore had not paid his Willis-Knighton emergency room bill. He demanded the payment of medicals, the choice of Dr. David Googe as his treating orthopedist, and penalties and attorney fees. Offshore denied all claims.
Brown testified that after his accident, he made several trips to Willis-Knighton and LSU Medical Center for treatment; however, the next documented visit was not until June 28, 2009, at LSU. The triage nurse wrote, “Injury 6-7 months ago” and “states told sprain/ torn ligaments, told needs surgery at WK,” but not that it was work-related. On a return visit August 14, the physician’s assistant noted, “Pt. reports knee pain began after injury on job,” and that Brown was using crutches and wearing a plastic knee brace. The emergency room doctor diagnosed a meniscus tear and muscle spasm, gave him a local anesthetic, and told him to take Tylenol and go to physical therapy. Willis-Knighton records do not show that he ever attended therapy.
LBrown went to his chosen orthopedist, Dr. Googe, in December 2009. Dr. Googe noted a “defect in the midsubstance of his quadriceps and severe pain with palpation,” and took X-rays showing “diffuse osteopenia [loss of bone mass] and a complex regional pain syndrome-type pattern.” An MRI in January 2010 showed some defects to the lateral and medical menisci; Dr. Googe diagnosed a quadriceps tendon tear. He also prescribed physical therapy, but again there is no evidence that Brown ever attended.
On Offshore’s motion, Brown went for an independent medical examination (“IME”) with orthopedist Dr. Karl Bilder-back on January 12, 2011. Dr. Bilderback reported that aside from one remark by Dr. Farquhar in the Willis-Knighton emergency room report, Brown’s account *499 of the accident and injury had been consistent. He also found a lump in Brown’s mid-thigh and an extremely limited range of motion. Even though he felt Brown’s complaints were out of proportion to the injury, Dr. Bilderback diagnosed a “rectus femoris tear” which “could be consistent with the mechanism of the injury, as reported.” He advised that surgery would not be helpful and instead recommended physical therapy. Finally, he found that Brown’s condition was likely permanent, but that he could probably work in “light to sedentary activity.”
Brown then had a functional capacity evaluation (“FCE”) with Dr. Austin Gleason in June 2011. This found a Class 2 impairment, translating to a 25% impairment to his lower extremity and 10% to his whole body. Dr. Gleason also found Brown had reached maximum medical improvement and could no longer drive a truck for a living; he advised work in a “light | ^physical demand range,” but noted that Brown had no training or skills for anything other than heavy labor.
The case came to trial in October 2011. Brown testified as outlined above. By then he was taking three medications regularly, walking with a cane most of the time, and having to elevate his leg about half the time he was sitting down. He testified that in his current state, he cannot drive for a living. His mother, Ms. McCutcheon, confirmed that he told her about the injury when it happened, has been in pain ever since, and must prop up his leg most of the time.
Offshore’s district manager, Coker, also testified as outlined above. He insisted that the dispatcher’s note of October 24, 2008, said only that Brown was “unable to drive — he pulled a muscle,” and not that he had an accident. Coker maintained he was totally unaware of this claim until two days before trial; he would not even admit that Brown was working on October 24, 2008, as Longview, where the accident allegedly occurred, was not a normal route. Coker was adamant that Brown never once reported a work-related accident.

Action of the Workers’ Compensation Judge

The WCJ wrote an 11-page opinion, outlining the facts and reaching the following conclusions of law:
(1) Brown sustained a work-related injury on October 24, 2008. There were discrepancies in the hospital records as to when and how the injury occurred, but the records mostly confirmed his account at trial; Dr. Farquhar’s references to a “developing injury” were “simply errors on the part of hospital personnel.”
| fi(2) Brown’s current medical condition resulted from the injury. There was no evidence of any prior or subsequent injury that caused these symptoms.
(3) Brown was not entitled to TTD or PTD benefits, as there was no evidence that he could not engage in any employment or self-employment, especially as he drew unemployment benefits and worked part-time until June 11, 2009. However, Brown was entitled to SEB starting ■ June 28, 2009, the date he sought further treatment for his injuries.
(4) Brown was not entitled to penalties and attorney fees. Offshore reasonably controverted the claim by showing that Brown did not pursue workers’ compensation until he had exhausted his unemployment, EEOC remedies and part-time work.
Offshore has appealed, raising three assignments of error. Brown has answered, raising two.

*500
Discussion: Work-Related Accident and Causation

By its first two assignments of error, Offshore disputes the findings that Brown sustained a work-related accident and that his current medical complaints resulted from the alleged accident. Offshore cites the unrelaxed burden of proof for a compensation claimant, set out in Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992), and contends that without the requisite corroboration, the claimant’s testimony is insufficient to prove an accident. In support, Offshore cites Johnson v. T & J Hauling Co., 46,853 (La.App. 2 Cir. 1/25/12), 86 So.3d 1, unit denied, 2012-0657 (La.4/20/12), 85 So.2d 1276, and Dunlap v. Madison Parish School Bd., 46,139 (La. App. 2 Cir. 4/13/11), 61 So.3d 833. Offshore also argues that the district manager, Coker, effectively contradicted virtually all of Brown’s testimony; Brown gave radically inconsistent accounts to medical personnel, and waited eight months to seek further medical treatment; and a pulled muscle is a “generic |7injury” not automatically associated with a work-related accident. Further, Offshore argues that the claimant must prove causation by a preponderance of the evidence. Hofler v. J.P. Morgan Chase Bank NA, 46,047 (La.App. 2 Cir. 1/26/11), 57 So.3d 1128, and citations therein. Offshore reiterates the inconsistencies in Brown’s accounts of the accident and injury, urging that these provided a basis to discredit his testimony. Offshore suggests that any number of things could have happened to cause this injury, and his condition may be simply degenerative.
Brown responds that the WCJ carefully considered the whole record and reasonably discounted the minor inconsistencies and delays.
A workers’ compensation claimant must prove by a preponderance of the evidence that he received “personal injury by accident arising out of and in the course of’ his employment. La. R.S. 23:1031 A; Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. Although the workers’ compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; he must prove by a preponderance of the evidence that an accident occurred. McLin v. Industrial Specialty Contractors Inc., 2002-1539 (La.7/2/03), 851 So.2d 1135; Dugan v. St. Francis Med. Center, 45,149 (La.App. 2 Cir. 4/14/10), 34 So.3d 1157, writ denied, 2010-1114 (La.9/3/10), 44 So.3d 685.
A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged Isincident.” Bruno v. Harberi Int’l Inc., supra. In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Dugan v. St. Francis Med. Center, supra; H. Alston Johnson III, Workers’ Compensation Law & Practice (13 La. Civil Law Treatise) § 253 (5 ed. 2010); 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 8:1 (2 ed. 2002).
The claimant is not required to prove the exact cause of his disability, but he must demonstrate by a preponderance of the evidence that the accident has a causal connection with it. Iberia Med. Center v. Ward, 2009-2705 (La.11/30/10), 53 So.3d 421. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good *501 health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of causal relation between the accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. Doucet v. Baker Hughes Prod. Tools, 93-3087 (La.3/11/94), 635 So.2d 166.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dept., supra. Under this rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. Id. When there are two 13permissible views of the evidence, the WCJ’s choice between them can never be manifestly erroneous or clearly wrong. Id. The reviewing court is emphatically not permitted to reweigh the evidence or reach its own factual conclusions from the record. Marange v. Custom Metal Fabricators Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253. In Marange, the supreme court decried the “fundamental misunderstanding of the principles of appellate review of facts” when the court of appeal carefully finessed the statement of the law in Bruno to deduce that coworker testimony did not seriously discredit the claimant’s account of the accident and, thus, to reverse a judgment denying benefits. The supreme court strongly admonished the intermediate courts to defer to the WCJ’s reasonable credibility calls and factual findings. Id. at 5, 93 So.3d 1253.
Despite Offshore’s attempt to depict Brown’s statements to medical personnel as a hopeless mass of contradiction, we do not find the level of inconsistency that would warrant disturbing the WCJ’s findings. The only truly outlying medical evidence was Dr. Farquhar’s note on October 25, 2008, that the symptoms “occurred gradually, 3 year(s) ago,” an observation inconsistent with the nurse’s note taken the same day, the nurse’s notes of June 28, 2009, the physician’s assistant’s note of August 14, 2009, and of course Brown’s unwavering testimony. Offshore also cites Coker’s testimony that Brown reported only an injury, not a work-related accident, as refuting his claim to have reported the accident; however, Coker’s account, even on the impassive record, seems greatly informed by the absence of a DOT accident report, and this absence was credibly explained |10as the dispatcher’s inability to find the right form when Brown called. The WCJ was obviously entitled to subordinate Coker’s account to Brown’s. Perhaps most impressive was the testimony of Dr. Bilderback, a physician selected by Offshore to perform the IME in January 2011. Dr. Bilderback accepted that the injury “could be consistent with the mechanism of the injury, as reported.” There is nothing in the record to refute this opinion.
We distinguish the cases of Dunlap v. Madison Parish School Bd., supra, and Johnson v. T & J Hauling Co., supra, cited by Offshore in brief. In those cases, the employers introduced significant evidence that prior to the work-related injuries, the claimants suffered symptoms similar to those for which compensation was sought as a result of the injuries. The WCJs found that the claimants failed to prove that their disability resulted from the work-related accidents, and this court affirmed those findings as reasonable and supported by the record. By contrast, there is no similar evidence that Brown had any pre-existing injury, and this record provides no basis to overturn the WCJ’s finding.
*502 On the issue of causation, we note that Brown’s mother closely corroborated his symptoms after the accident. Even Coker conceded that after a few months as a good employee, Brown began to show a decline in performance, eventually becoming unreliable and failing to answer his phone. A rational factfinder could conclude that the decline in work performance coincided with the effects of this accident. We find no manifest error.
| ^Finally, Offshore urges that the long delay between the alleged accident and June 28, 2009, when Brown finally sought further medical treatment, proves that whatever happened on October 24 must have been relatively minor. However, the discharge diagnosis of “bruise contusion hematoma, knee sprain, sprains,” and a prescription for Lortab 7.5, refutes the contention that this was a negligible bump on the knee. Offshore also suggests that by June 28, anything could have happened to cause the injury, which might even be degenerative. To the contrary, this record has no suggestion of an intervening accident or diagnosis of degenerative disease. Without such proof, this court will not disturb the WCJ’s finding that the accident of October 24, 2008, occurred and resulted in the disability that led him to seek further medical treatment on June 28, 2009. These assignments of error lack merit.

Award of SEB

By its third assignment of error, Offshore urges the WCJ erred in awarding SEB effective June 28, 2009. Offshore shows that the claimant’s burden of proof is a preponderance of the evidence. La. R.S. 23:1221(3); Poissenot v. St. Bernard Parish Sheriff’s Ofc., 2009-2793 (La.1/9/11), 56 So.3d 170. Offshore contends that nobody at LSU Medical Center placed Brown on work restrictions on June 28; Dr. Googe never imposed any; only in June 2011, when Brown took the FCE, were restrictions finally imposed, and Offshore argues that by that time, Brown had the same earning capacity as when he was driving part-time for the auto auction. Offshore concedes that some cases denying SEB involved claimants who refused light-duty [12work offered by the employers. Palmer v. Alliance Compressors, 2005-478 (La.App. 3 Cir. 11/2/05), 917 So.2d 510, writ denied, 2005-2440 (La.3/24/06), 925 So.2d 1231; Synigal v. Vanguard Car Rental, 06-761 (La.App. 5 Cir. 1/30/07), 951 So.2d 1197. Offshore argues that because it had already terminated Brown for cause, it could not offer him light-duty work, and the award of SEB was in error.
Brown responds that what can be gleaned from the medical reports, especially Dr. Bilderback’s report, fully supports the finding that he can no longer earn 90% of his pre-injury wage.
 The purpose of SEB is to compensate an injured employee for the wage-earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard Parish Sheriff’s Ofc., supra. An employee is entitled to SEB if he sustains a work-related accident that results in his inability to earn 90% or more of his pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Poissenot v. St. Bernard Parish Sheriffs Ofc., supra. Only when the employee makes this initial showing does the burden shift to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic area. La. R.S. 23:1221(3)(c)(i); Poissenot v. St. Bernard *503 Parish Sheriff’s Off., supra. The factual findings pertaining to the award or denial of SEB are subject to the manifest 11serror standard of appellate review. Id,.; Patterson v. General Motors Corp., 46,559 (La.App. 2 Cir. 9/21/11), 73 So.3d 465.
Offshore correctly shows that it was not until June 2011, when Brown had the FCE, that Dr. Gleason diagnosed a Class 2 impairment, 25% to the lower extremity and 10% to the whole body. However, Brown went to LSU Medical Center on June 28, 2009, with his knee in a brace and walking on crutches; later examinations yielded, in August 2009, a diagnosis of a meniscus tear, and in January 2011, a rec-tus femoris tear. Brown testified that all during this time he had knee pain requiring him to use a cane, elevate his leg when sitting, and take many medications. On this record, the WCJ was entitled to find that Brown had this disability as of June 28, 2009.
There is no merit to Offshore’s contention that Brown failed to prove that this disability equated to inability to earn 90% of his pre-injury wage. Dr. Gleason found that Brown had reached maximum medical improvement and could not drive a truck anymore; he advised work in the “light physical demand range,” even though Brown had no training or skills for anything other than heavy labor. Brown admitted that he worked a short while transporting vehicles for the auto auction, until the leg pain made this impossible. The WCJ was entitled to find that this disability made Brown unable to earn 90% of his pre-injury wage. Thereafter, Offshore presented no evidence of any job within Brown’s restrictions that was available to him in his or Offshore’s reasonable geographic area. La. R.S. 23:1221(3)(c)(i). The WCJ did not err in finding that Offshore failed to overcome Brown’s initial showing of his right to SEB. This assignment lacks merit.
| uOther Benefits
By his first assignment of error, Brown urges the WCJ erred in not awarding SEB with a zero offset effective November October 24, 2008, the date he was terminated from Offshore, and in not awarding him TTD or PTD benefits effective June 28, 2009. He contends that for the first period, his only work was part-time for the auto auction, which paid much less than 90% of his pre-injury wage. Further, Dr. Googe diagnosed complex regional pain syndrome in December 2009 and reflex sympathetic dystrophy symptoms in August 2011, and this is clear and convincing evidence that Brown had been completely disabled since June 28, 2009. Brown cites no cases or statutes in support of his argument.
Offshore responds that for the first period, no doctor placed Brown under any restrictions whatsoever; for the second, there was no evidence that complex regional pain syndrome is totally disabling.
As noted above, the employee claiming SEB bears the initial burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn 90% of his pre-injury wage under the facts and circumstances of the individual case. La. R.S. 23:1221(3)(a); Poissenot v. St. Bernard Parish Sheriff’s Off., supra. The period from November 24, 2008, through June 28, 2009, included two months in which Brown drew unemployment. No indemnity benefits are payable for any week “in which the employee has received or is receiving unemployment compensation benefits.” La. R.S. 23:1225 B; Taylor v. Plastech Engineered Products, 45,846 (La.App. 2 Cir. 12/15/10), 56 So.3d 356. Obviously, no worker I ^compensation benefits are due for these *504 two months. For the remainder of the period, Brown described his pain and inconvenience; however, the record also shows that he was under no work restrictions from any doctor, did not seek additional medical treatment, and was able to do some work for the auto auction. The record as a whole supports the WCJ’s finding that Brown did not prove, by a preponderance, his right to SEB from November 2008 through June 2009.
A claim for TTD or PTD requires proof “by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, including, but not limited to, * * * employment while working in any pain[.]” La. R.S. 23:1221(l)(c), (2)(c). Evidence that the claimant cannot return to any gainful employment without working in substantial pain is not sufficient to support an award of total disability. Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App. 2 Cir. 11/2/11), 79 So.2d 417. Dr. Gleason assessed a 25% impairment of the leg and 10% of the whole body, and stated Brown could work in a light physical demand range; no doctor testified that complex regional pain syndrome was totally disabling. Moreover, any award of PTD requires a finding relative to rehabilitation under La. R.S. 23:1226 D; this record contains no such finding. The WCJ did not abuse its discretion in finding that Brown failed to prove by clear and convincing evidence that he was entitled to TTD or PTD benefits. This assignment lacks merit.

11(¶Penalties and Attorney Fee

By his second assignment of error, Brown urges the WCJ erred in denying penalties and attorney fees. He argues that once Offshore’s own expert, Dr. Bilderback, discounted the discrepancy between the nurse’s notes and physician’s notes from Willis-Knighton on October 25, accepted Brown’s account of the accident, and found his injury consistent with that account, Offshore had no further basis to reasonably controvert the claim. He requests penalties, interest and an attorney fee as prescribed by La. R.S. 23:1201 F(2).
Offshore responds that despite Dr. Bild-erback’s report, the employer raised genuine issues as to the occurrence of the accident and causation of Brown’s injuries to support the denial of penalties and fees.
The failure to provide payment of benefits will result in a penalty and attorney fee “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2); McCarroll v. Airport Shuttle Inc., 2000-1123 (La.11/28/00), 773 So.2d 694. The phrase “reasonably controvert” means that the employer must have “some valid reason or evidence on which to base his denial of benefits.” Brown v. Tex-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885; Dugan v. St. Francis Med. Center, supra. Awards of penalties and attorney fees in compensation cases are essentially penal, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Co., 2004-0100 (La.3/2/05), 894 So.2d 1096. The | ,7penal provision of R.S. 23:1201 is strictly construed. Id.; Langley v. Petro Star Corp. of La., 2001-0198 (La.6/29/01), 792 So.2d 721. Penalties are not to be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits; the mere fact that an employer loses a disputed claim is not determinative. Dugan v. St. Francis Med. Center, supra. The WCJ’s grant or denial of penalties and fees under the workers’ compensation stat *505 ute is subject to manifest error review. Thomas v. Browning-Ferris Inc., 2004-1584 (La.2/25/05), 894 So.2d 1091.
Although the WCJ accepted Dr. Bilder-back’s medical opinion as to injury and disability, it was not required to accept the doctor’s essentially lay opinion as to the mechanics of the accident. Offshore presented the testimony of Coker, its district manager, that Brown did not initially report a work-related accident, only that the clutch was sticking, and that he (Coker) was unaware of this claim until two days before trial. Offshore also showed some minor inconsistencies in the medical records as to when the injury occurred. These facts, though inadequate to defeat Brown’s claim, were sufficient to reasonably controvert it. We detect no manifest error.

Conclusion

For the reasons expressed, the judgment is affirmed. Any unpaid costs are to be paid one-half by Offshore Energy Services Inc. and one-half by Leroy Brown.
AFFIRMED.