# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-652


PATRICK GLEASON

VERSUS

LAFAYETTE GENERAL MEDICAL CENTER


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 10-06134
ADAM JOHNSON, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**Cooks, J., dissents and assigns written reasons.**


**AFFIRMED IN PART AND REVERSED IN PART.**



**Graham N. Smith**
**Onebane Law Firm (APC)**
**P.O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Lafayette General Medical Center**

**Richard E. Smith**
**Attorney at Law**
**600 Jefferson Street, Suite 404**
**Lafayette, LA  70501**
**(337) 354-3015**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Patrick Gleason**

**DECUIR, Judge.**

In this workers' compensation case, both claimant and defendant appeal adverse judgments of the workers' compensation judge.

## FACTS

Patrick Gleason injured his shoulder on July 23, 2007, while working as an executive chef for Lafayette General Medical Center (LGMC). He underwent two arthroscopic surgeries for that injury. The first surgery was on May 8, 2008, and the second on January 21, 2009. He was paid temporary total disability benefits (TTD) during his recovery from both surgeries. Gleason returned to work on March 9, 2009. The only restriction placed on Gleason was that he not lift more than forty pounds.

Gleason's executive chef position did not require lifting beyond his restriction, so he returned to work without the need for a job modification. Gleason worked without complaint until May 13, 2010, when he voluntarily submitted a resignation letter indicating that he would be leaving on May 27, 2010, to pursue career objectives.

Unknown to LGMC, Gleason had conditionally accepted a position as executive chef at a local restaurant pending a drug screen. Gleason did not pass the drug screen due to the presence of pain medication in his system. Gleason returned to LGMC and attempted to rescind his resignation on May 18, 2010. LGMC declined his offer to be reemployed and made his resignation effective immediately.

Three weeks later, on June 8, 2010, Gleason's treating orthopedic surgeon, Dr. Michael Duval, declared him unable to work pending diagnostic testing. LGMC declined to pay benefits because Gleason was no longer their employee.

Gleason filed a claim for TTD benefits which the trial court held to be prescribed. Gleason amended his claim seeking supplemental earnings benefits (SEBs), penalties, and attorney fees. The trial court granted SEBs from June 28, 2010, but denied the request for penalties and attorney fees. Both parties appealed, and Gleason answered seeking attorney fees on appeal.

## TEMPORARY TOTAL DISABILITY

Gleason contends the workers' compensation judge erred in finding that his claim for TTD benefits had prescribed.

In order to prove entitlement to TTD benefits or to permanent total disability benefits, a claimant must demonstrate by clear and convincing evidence that he is physically unable to engage in any employment, including working while in any pain. La.R.S. 23:1221(1)(c) and (2)(c). Disability is a question of fact. *Jones v. Universal Fabricators*, 99-1370 (La.App. 3 Cir. 2/9/00), 758 So.2d 856, *writ denied*, 00-742 (La. 5/12/00), 762 So.2d 13.

Louisiana Revised Statutes 23:1209 provides in pertinent part:

> § 1209. Prescription; timeliness of filing; dismissal for want of prosecution
>
> A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.

This "is the only prescriptive period setting forth the amount of time a worker has to file a claim for benefits." *Dufrene v. Video Co-Op,* 02-1147, p. 10 (La. 4/9/03), 843 So.2d 1066, 1073.

Gleason last received benefits on March 9, 2009. Accordingly, prescription tolled on his claim on March 10, 2010. At that time, he was employed by LGMC and had not resigned or been declared unable to work. Gleason's claim for TTD benefits is prescribed on its face. The cases cited by Gleason seeking to extend the prescriptive period under the 'developing injury rule' are inapplicable. Accordingly, we find no error in the workers' compensation judge's failure to award of TTD benefits.

## SUPPLEMENTAL EARNINGS BENEFITS

LGMC alleges the workers' compensation judge erred in awarding Gleason SEBs from June 8, 2010. We agree.

An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La.R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733.

Gleason voluntarily resigned his position with LGMC to seek other employment. At the time, he had a job earning his full wage and had been conditionally accepted for another position. Gleason's disability status did not change until three weeks after he had resigned from LGMC. While workers' compensation laws are to be liberally construed in favor of compensation, we cannot say that the social contract extends to providing compensation for employees who voluntarily leave and later become disabled. In this case, Gleason

3

has failed to establish that he is entitled to SEBs. The workers' compensation judge's award of SEBs is reversed.

## PENALTIES AND ATTORNEY FEES

Gleason contends the workers' compensation judge erred in failing to award penalties and attorney fees and asks this court to award them for prosecution of this appeal. The record before us supports the workers' compensation judge's decision, and we decline to make an award for work on this unsuccessful appeal.

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed insofar as it finds Gleason's claim for TTD benefits prescribed and declines to award penalties and attorney fees. In all other respects, particularly insofar as it awards SEBs, the judgment is reversed. All costs of these proceedings are taxed to claimant, Patrick Gleason.

**AFFIRMED IN PART AND REVERSED IN PART.**

PATRICK GLEASON

VERSUS

LAFAYETTE GENERAL MEDICAL CENTER


**Cooks, J. Dissents.**

The majority seems stuck on the notion that if an employee voluntarily leaves a job paying him better than 90% of his pre-employment wages, and **later becomes disabled** then he is out of luck.   Their conclusion is based on some sort of "timing" requirement that I cannot find in the workers' compensation statutes. The only time that is relevant is whether the SEB claim was filed within 3 years from the date of the last payment of benefit, which occurred in this case on March 9, 2009. **No one disputes that the SEB claim was timely**. Resignation from a job is not the relevant issue here; and, **resignation alone can never be used to deny a claimant benefits.**   It is also irrelevant that he worked for 14 months and earned more than 90% of his pre-injury wages.  The only time "resignation," which the courts often equate with the term retirement, becomes significant is when an employer is asserting that the employee has permanently left the workforce; and, thus, the employer is relying on R.S.23:1221(3)(d)(iii) to escape payment of the full 520 weeks of SEB as opposed to only 104 weeks.

A worker is not bound to remain with a particular employer, as Lafayette General implicitly urges here.  He is free to leave a job and seek another.  If later it is medically determined that he in fact is not able to earn 90% of his pre-injury employment wages in the open employment market he is entitled to SEB if he is not actually working. *See Breaux v. City of New Orleans*, 97-273 (La. App. 4 Cir.

8/27/97), 699 So.2d 482, *writ denied* 97-2491 (La.12/19/97), 706 So.2d 454 and the cases cited therein.

In *Kinchen v. City of Shreveport*, 46,490 (La.App. 2 Cir. 9/21/11), 73 So. 3d 1011, *writ granted* 11-2262 (La. 12/12/11), 76 So.3d 1161, a captain with the Shreveport Police Department for 27 years injured her left shoulder on the job in October 2006. She received TTD until she returned to work with restrictions on October 22, 2007. On December 17, 2007, the officer wrote a letter of "retirement" stating: "I am writing this to advise you that, effective January 1, 2008, I will be retiring from the Shreveport Police Department. I have enjoyed my 27 years working for the department but feel it is time for me to pursue my personal interest." At the time of her retirement she had not undergone testing to determine "any disability" rating. After leaving the department, she worked approximately two months for another employer but she returned to the doctor and on May 19-20, 2008 she underwent a FCE. She was assigned a disability rating. On September 29, 2008 she filed a disputed claim seeking SEB. The city's affirmative defense was the officer took regular tenure retirement; and, as such, had voluntarily withdrawn from the workforce and at the time of her voluntary retirement there was available work for her "that satisfied any putative workplace restriction" imposed by her treating physicians. In other words, she could earn 90% of her pre-injury wages and she had a job with the police department. The city maintained she was not entitled to SEB because she was working and voluntarily quit.

The facts of this case are similar to *Kinchen*. Here Mr. Gleason injured his right shoulder on July 23, 2007. He continued to work with restrictions until he underwent surgery on May 8, 2008. He was paid TTD. He returned to work on June 4, 2008. He underwent a second surgery January 21, 2009. He was paid

TTD until he returned to work March 2009 with a 40-lb lift restriction. On May 13, 2010 Gleason submitted a letter of resignation stating he desired "to return to the restaurant industry for growth and experience" and "to pursue career objectives." The employer's affirmative defense in this case is that at the time Mr. Gleason voluntarily resigned there was available work for him which satisfied any workplace restriction then imposed by his treating physician. He voluntarily quit to go to another job. The hospital asserts Gleason is not entitled to SEB because his disability occurred three weeks after his last day as its employee. In other words, he could earn 90% of his pre-injury wages at the time he quit the job.

It is also worth noting that Kinchen's letter said she was leaving to pursue "personal interest," at trial she testified that it was because she "did not feel she could perform the duties as a police officer. " She testified: "I knew that the basic requirements for the job I could not physically do and as a result this was taxing on me emotionally." She further testified she was restricted from lifting beyond a certain weight and she "was always in fear [of getting] into a confrontation." She worked for a telemarketing company for two months after leaving the department, and, at the time of trial, **she was looking for a job**.

Here, Mr. Gleason's resignation letter expressed his intent to pursue "career objectives" and for growth and experience. The judge specifically notes, in her oral ruling, Gleason testified "he wanted to find a job that was not as intense on his shoulder and this job I may have found may have been better for me." He also testified: "The job at the hospital got extremely hard to do." Mr. Gleason had not worked since leaving the hospital job. The trial judge obviously accepted these facts as credible.

Both employees quit the job to get another job; and, both returned to the doctor after leaving a job where they were earning more than 90% of their pre-

3

injury wages. Kinchen actually got another job for two months; Gleason did not get what he sought because he was taking prescription medication for pain he continued to experience **from his work-related shoulder injury**.[1]  Both employees' full disability status was not determined until after they stopped working for their employer.  The appellate court found Kinchen was entitled to SEB from the police department.  The majority here says Gleason should not get a dime.

The majority opinion represents an embarrassing departure from this court's usual paradigm of jurisprudential excellence in workers' compensation law.  In denying rightful Supplemental Earnings Benefits to the claimant, the majority articulates a rule that "[w]hile workers' compensation laws are to be liberally construed in favor of compensation, we cannot say that the social contract extends to providing compensation for employees who voluntarily leave and later become disabled."  In enunciating this new "rule," the majority fails to cite any authority whatsoever, whether statutory, codal, or jurisprudential.  It establishes a new legislative rule by judicial fiat.

There is no dispute that Gleason is now disabled, the disability is related to his work injury, and he cannot earn 90% of his pre-injury wages.  The doctor testified to that fact, the judge found it to be so, the employer does not dispute it, and the majority accepts it as proven. The thing that rubs the majority is the fact that he was working for over a year, and resigned his job to get another.  They may not like what he did, or think he was rather shortsighted for doing so; but we cannot deny him SEB just because he was earning more than 90% of his pre-injury

---

[1] The majority opinion recites that "Gleason did not pass the drug screen due to the presence of pain medication in his system," leaving dangling the hidden thought that he was illegally taking drugs.  It is unfortunate that this thought has been planted on the public pages without any attempt by the majority to acknowledge the record indisputably establishes the drugs Mr. Gleason was taking were prescribed and directly connected to the pain he continued to endure as a result of his work injury.

wages when he left. The Louisiana Supreme Court in *L.S. Allen v. The City of Shreveport* 92-874 (La.5/24/93), 618 So.2d 386, found an employee was still entitled to SEB even though he could return to his former employment which was no longer available to him as is the case here. The court emphasized: "it is irrelevant whether plaintiff is physically able to perform his former sedentary job that is no longer available. The relevant question is whether plaintiff is partially disabled and whether he is unable to earn ninety percent of the wages he was earning prior to the injury." *Id*. at 388-89.

In other words, the court explained:

> Ironically, plaintiff was physically able to return to his former (but no longer existing) position, but was physically unable to perform the duties of other physically demanding jobs of equal or even lesser pay. But this strange combination of circumstances does not alter the fact that plaintiff on this record was injured on a job of long standing that paid him $12.62 per hour, is partially disabled because of his employment injury, is **presently** unable at least partially because of the disability, to earn 90% of the wages he was earning at the time of his injury. He is therefore entitled to supplemental earnings benefits.

*Id*. at 389. [2]

I cannot emphasize better than the Supreme Court that it is irrelevant when Gleason left the hospital job or even that he left a job he could perform paying 90% of his pre-injury wages. The important fact here is that **presently** he cannot earn 90% of his pre-injury wages, his claim for SEB was timely filed and the employer failed to rebut this evidence at trial.[3] The majority opinion damages the

---

[2] In *Brown v. Offshore Energy*, WL 3192808 (La.App. 2 Cir. 8/8/12), ___So.3d___, the employee Leroy Brown was awarded SEB after the employer fired him, he got another job, and unemployment benefits. He returned to the doctor and underwent a FCE long after his injury. His disability status was upgraded. The court found he could not earn 90% of his pre-injury wages. Even when an employee actually leaves and gets another job, if his prior injury with the first employer ultimately renders him disabled while working for a second employer, the first employer will still have to pay SEB. *See Silverman v. Weatherford International* 46.402 and 46,403(La.App. 2 Cir. 10/19/11), 83 So. 3d 11, *writ denied* 12-76 (La.3/23/12), 85 So.3d 89.

[3] The majority did not reach the employer's third reason for its assignment of error asserting Gleason allegedly is not eligible to receive SEB because "Gleason has been temporarily totally disabled since June 8, 2010 and remains so" making him eligible for TTD only, which the trial court ruled has prescribed. Claimant's inability to work in this case is the result of him experiencing substantial pain. His treating physician indicated he cannot work at this time because of pain and the need to take pain medications. Defendant neither offered nor otherwise

5

salutary underpinnings of workers' compensation law with this unsupported aberrant "rule." Respectfully, I cannot participate in such a deviation from this court's established standards and the settled law.

---

established that a job is presently available and claimant can perform the work earning 90% of his pre-injury wages. Absent this proof, the WCJ correctly awarded SEB at a zero base.

Although Defendant settled the medical claim in this case prior to the hearing, its failure to pay medical has delayed full assessment of Plaintiff's future ability to perform work of any kind and he has not been offered any rehabilitation services. *See Kaufman v. Fishery Products of La., Inc.*, 03-523 (La.App. 4 Cir. 10/22/03), 866 So.2d 256, and cases cited therein.